UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| KENNETH J. WORTHY,<br><br>                            Plaintiff,<br><br>      -against-<br><br>SAMARITAN DAYTOP VILLAGE, and ZAIDA RIVERA, an individual,<br><br>                            Defendants. | **COMPLAINT**<br><br>Jury Trial Demanded<br><br>Index No.: |

Plaintiff Kenneth J. Worthy ("Plaintiff"), by and through his attorneys, The Law Office of David H. Rosenberg, P.C., complaining of Defendants Samaritan Daytop Village ("Samaritan"), and Zaida Rivera ("Rivera", Hispanic/brown program director, and all together as "Defendants") herein, alleges upon knowledge as to himself and his own actions, and upon information and belief as to all other matters, as follows:

## JURISDICTION AND VENUE

1. This is a race, color, and disability ("protected classes") discrimination, as well as retaliation case, brought pursuant to Title VII of the Civil Rights Act of 1964, as amended ("Title VII"); the Americans with Disabilities Act of 1990 ("ADA"); the New York City Human Rights Law, New York City Administrative Code § 8-502(a), *et seq.* ("NYCHRL"); and the New York State Human Rights Law, Executive Law § 296, *et seq.* ("NYSHRL").

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3), and 28 U.S.C. § 1343(a)(4).

3. Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to this cause of action, including the unlawful employment practices alleged herein, occurred in this district.

4. All conditions precedent to maintaining this action have been met. A charge of discrimination was filed with the Equal Employment Opportunity Commission, a Notice of Right to Sue was emailed to Plaintiff on January 26, 2022, and this action has been filed within ninety (90) days of receipt.

## PARTIES

5. At all relevant times, Plaintiff was a black African American male resident of Queens County, New York, and an employee of Samaritan.

6. At all relevant times, Samaritan had 15 or more employees.

7. At all relevant times, Samaritan was a corporation duly incorporated, validly existing, and in good standing, under the laws of New York, with a principal business location of 138-02 Queens Boulevard, Briarwood New York, 11435 and an office location at 710 Hendrix Street, Brooklyn, New York, 11207 ("Premises").

8. At all relevant times, Samaritan was a human services organization that provided substance abuse treatment, mental health and primary care, specialized programs for military veterans, vocational and employment services, shelter and transitional housing, and services for seniors.

9. At all relevant times, Plaintiff reported to work at the Premises.

10. Samaritan was Plaintiff's employer within the meaning of the law.

## BACKGROUND

11. In or around August 2016, Plaintiff commenced employment as the director of operations

at the Premises.

12. Due to sheer hard work and dedication to the job, Plaintiff was well-liked by co-workers and customers. Notwithstanding these positive contributions, Plaintiff was discriminated against on account of the protected classes and was retaliated for opposing discriminatory practices.

## FACTS

13. In or around March 2020, Rivera told Plaintiff generally, "You have to interview my ex-boyfriend for the maintenance position. I want to replace Sam."[1] Rivera revealed that her ex-boyfriend was Hispanic and "a real pain in the ass." As Sam was a hard-working black maintenance supervisor and a pleasure to work with, Plaintiff objected, and said generally, "No. I don't understand. Sam [Mcquiller] is in maintenance, he's very pleasant, and is doing great. Why are you going after him?" Rivera shook her head in disapproval and said, "You have to do what I say or will write you up." Plaintiff believed Rivera was trying to fire Mcquiller and replace him with her Hispanic ex-boyfriend on account of race/color. Other non-black and non-African American employees were not treated this way.

14. In or around April 2020, Rivera seemed to reveal her plan to wrongfully terminate black African American employees, telling Plaintiff generally:

> I don't like Tracy[2], James [Myers, black African American maintenance worker], Sam [Mcquiller] and Belville Ifill [Ifill, black African American maintenance worker]. I want to get rid of them. I don't think they know what they are doing.

As all of the employees Rivera complained of were black African American employees

---

[1] Sam Mcquiller ("Mcquiller") was a black African American maintenance supervisor.
[2] Tracy Parker ("Parker") was a black African American security manager.

3

who performed well and knew what they were doing, Plaintiff believed that Rivera wanted them terminated on account of their race and color. Plaintiff objected to this by replying generally, "This is a good staff, they have been doing a great job, this doesn't make sense." Plaintiff was then retaliated against for opposing discriminatory practices.

15. In or around July 2020, Plaintiff complained to Alyssa Sanchez ("Sanchez", brown Hispanic senior program manager) with words to the effect of, "I don't want to be alone with Zaida [Rivera] any more. She tells me to fire black employees and when I disagree with her, she threatens to write me up. This is discrimination and it is not right." Sanchez replied generally, "I will speak with her." Notwithstanding this complaint, no disciplinary action was given, no corrective action was taken, and no investigation was conducted. On the contrary, Plaintiff was forced to continue working under Rivera in the aforementioned hostile work environment. This caused Plaintiff to feel embarrassed, uncomfortable, ashamed, hurt, and emotionally distressed. Other non-African American, non-black employees, and those who did not oppose discriminatory practices, were not treated this way.

16. In or around September 2020, Rivera, in front of Plaintiff, told Parker generally, "You are not good enough. You don't know what you are doing. I will write you up." Later that day, Rivera told Plaintiff generally, "I think I have someone to replace Tracy [Parker]." As Parker was a "good enough" employee who "knew" what she was doing, Plaintiff believed that Rivera was going to replace Parker on account of her status as a black African American employee. Thus, Plaintiff believed that he too would be terminated on account of his status as a black African American employee.

17. In or around September 2020, Parker told Plaintiff generally, "I don't like anything Zaida

4

[Rivera] is doing to me and I know she is coming after me. I am afraid for my job. My plan was to stay and apply for your position when you retire but I can't stand Zaida's harassment any longer and will have to leave." Plaintiff replied generally, "I feel the same way but you should try and stay and hopefully things will get better." Parker then admitted she could no longer withstand Rivera's hostile work environment, telling Plaintiff generally, "I am going to leave. I was offered a director position somewhere else but it pays less. I guess it's better than dealing with her [Rivera] and her hatred." Thus, Plaintiff believed that Parker was being forced to leave on account of her status as a black African American employee. This caused Plaintiff to feel embarrassed, uncomfortable, ashamed, hurt, and emotionally distressed.

18. In or around October 2020, Rivera replaced Parker with a non-black, non-African American, Hispanic female, Jennifer Sauaso. Thus, Plaintiff believed that Rivera sought to replace black African American employees with Hispanics only by creating and maintaining a racially hostile work environment designed to elicit unwanted resignations of black African American employees.

19. In or around January 2021, Rivera told Plaintiff generally, "You have to demote Alan Washington ("Washington", black African American senior shift leader) or I will have to fire him." As Washington was a good black African American employee, Plaintiff objected, and replied generally, "Why? Alan [Washington] is doing a great job." Rivera replied generally, "Just do what I say or I will fire him." Even though Washington was a good employee, Plaintiff did as instructed and demoted Washington. Other non-black and non-African American employees were not treated this way.

20. In or around January 2021, Plaintiff texted Sanchez, "Are there any other positions that I

5

can get at another site?" Sanchez replied generally, "There are no DOO[3] positions at present on the single side. Maybe on family side. Have you checked ADP. [sic] What is going on?" Plaintiff replied, "No I didn't check, but I will. Same old nonsense. Really don't like being here no more." Notwithstanding this complaint, no disciplinary action was given, no corrective action was taken, and no investigation was conducted. On the contrary, Plaintiff was forced to continue working under Rivera in the aforementioned hostile work environment. This caused Plaintiff to feel embarrassed, uncomfortable, ashamed, hurt, and emotionally distressed. Other non-African American, non-black employees, and those who did not oppose discriminatory practices, were not treated this way.

21. On or around February 5, 2021, Rivera handed Plaintiff a write-up for "lack of communication" and said generally in a condescending, yet enthusiastic tone, "Here you go." Plaintiff replied generally, "I don't know why you are giving this to me. I communicate with you every day. This is not accurate and you're coming after me." Rivera told Plaintiff words to the effect of, "Well that's not my problem." This caused Plaintiff to feel embarrassed, uncomfortable, ashamed, hurt, and emotionally distressed. Other non-African American, non-black employees, and those who did not oppose discriminatory practices, were not treated this way.

22. On or around February 6, 2021, Plaintiff complained to Sanchez with words to the effect of:

> Zaida [Rivera] just gave me a write up and I don't want to sign it. She is doing this on purpose, targeting me because of my color. I never received a write up before and have always communicated with her. She

---

[3] DOO is a term commonly referred within Samaritan as director of operations.

> is targeting me, I feel like I am being harassed, and it's beginning to affect my health.

Sanchez replied generally, "I will look into it." Notwithstanding this complaint, no disciplinary action was given, no corrective action was taken, and no investigation was conducted. On the contrary, Plaintiff was forced to continue working under Rivera in the aforementioned hostile work environment. This caused Plaintiff to feel embarrassed, uncomfortable, ashamed, hurt, and emotionally distressed. Other non-African American, non-black employees, and those who did not oppose discriminatory practices, were not treated this way.

23. On or around February 15, 2021, Rivera told Plaintiff generally, "You better sign that write-up." Thus, Plaintiff believed he was being set up for termination on account of his race, color, and in retaliation of his opposition to discriminatory practices.

24. In a few short weeks, Plaintiff had lost around 50 pounds due to a stress and anxiety disorder that developed as a result of the aforesaid discriminatory/retaliatory treatment.

25. The stress and anxiety disorder rendered Plaintiff a disabled person within the meaning of the law as it substantially limited one or more major life activities, such as Plaintiff's ability to sleep, eat, think, drink, and interact with others.

26. On or around February 20, 2021, Plaintiff told Sanchez generally, "Zaida [Rivera] is retaliating for my racial complaints and nothing is being done about it. I lost 50 pounds already from the emotional stress she is giving me and my staff. I am getting no support. Look at me it looks like I am sick." Sanchez replied generally, "Can I be honest with you, I thought you may have had cancer because you got so thin." Thus, Plaintiff believed his previous discrimination complaints were ignored also on account of his disability. Other non-disabled employees were not treated this way.

27. Notwithstanding Plaintiff's discrimination and retaliation complaints, no investigations were conducted, no disciplinary action was given, and no corrective action was taken. To the contrary, Plaintiff was forced to continue working in the aforesaid hostile work environment. Other employees who did not belong to Plaintiff's protected classes were not treated this way.

28. On or around March 19, 2021, Plaintiff could no longer endure the hostile work environment and told Sanchez generally:

> I am being harassed unnecessarily. I have worked for the company since 2016 and lost 50 pounds because of the racial retaliation and Alyssa [Sanchez] thinks I have cancer. I never had an issue before and now with this new manager [Rivera] there is a hostile environment, and I am being discriminated against. I can no longer work here. It is too emotionally stressful for me.

Sanchez did not disagree with Plaintiff who was then constructively terminated on account of the protected classes and in retaliation.

29. As a result of the discriminatory/retaliatory termination, Plaintiff suffered and continues to suffer emotional and economic damages.

### FIRST CAUSE OF ACTION
*(Discrimination and retaliation under Title VII against Samaritan)*

30. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

31. Plaintiff was discriminated against on account of race and color.

32. Plaintiff was retaliated for opposing discriminatory practices.

33. As more fully set forth above, Samaritan took adverse employment actions against Plaintiff, subjected him to a severe and pervasive hostile work environment and/or

maintained an atmosphere of adverse actions, chiefly being Plaintiff's termination, in violation of Title VII.

## SECOND CAUSE OF ACTION
*(Discrimination and retaliation under ADA against Samaritan)*

34. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

35. Plaintiff was discriminated against on account of disability.

36. Plaintiff was retaliated for opposing discriminatory practices.

37. As more fully set forth above, Samaritan took adverse employment actions against Plaintiff by subjecting him to more than petty slights and trivial inconveniences; inferior terms of a hostile work environment; and an atmosphere of adverse actions, chiefly being Plaintiff's termination.

## THIRD CAUSE OF ACTION
*(Discrimination and retaliation under NYSHRL against the Defendants)*

38. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

39. Plaintiff was discriminated against on account of the protected classes.

40. Plaintiff was retaliated for opposing discriminatory practices.

41. As more fully set forth above, Defendants took adverse employment actions against Plaintiff by subjecting him to more than petty slights and trivial inconveniences; inferior terms of a hostile work environment; and an atmosphere of adverse actions, chiefly being Plaintiff's termination.

42. Rivera participated in, as well as aided; abetted, incited, compelled and/or coerced the aforementioned unlawful conduct.

## FOURTH CAUSE OF ACTION
*(Discrimination and retaliation under NYCHRL against the Defendants)*

43. Plaintiff repeats, reiterates, and re-alleges each and every allegation set forth above with the same force and effect as if more fully set forth herein.

44. Plaintiff was discriminated against on account of the protected classes.

45. Plaintiff was retaliated for opposing discriminatory practices.

46. As more fully set forth above, Defendants took adverse employment actions against Plaintiff by subjecting him to more than petty slights and trivial inconveniences; inferior terms of a hostile work environment; and an atmosphere of adverse actions, chiefly being Plaintiff's termination.

47. Rivera participated in, as well as aided; abetted, incited, compelled and/or coerced the aforementioned unlawful conduct.

WHEREFORE, Plaintiff demands judgment against Defendants for all compensatory, liquidated, lost pay, front pay, back pay, injunctive relief, reinstatement, emotional, punitive, and any other damages permitted by law. It is further requested that this Court grant reasonable attorneys' fees and the costs and disbursements of this action and any other relief to which Plaintiff is entitled. Plaintiff demands a trial by jury.

Dated: Melville, New York  
  February 8, 2022

THE LAW OFFICE OF DAVID H. ROSENBERG, P.C.

_____  
DAVID H. ROSENBERG  
The Law Office of David H. Rosenberg, P.C.  
*Attorneys for Plaintiff*  
445 Broad Hollow Road, Suite 25  
Melville, N.Y. 11747  
Ph: (516) 741-0300  
F: (516) 385-4848